IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Moody Woodrow Tanksley, | No. 2:08-CV-02216-SRT |
| Plaintiff, | |
| vs. | <u>OPINION AND ORDER</u> |
| California Department of Corrections, et. al., | |
| Defendants. | |

Plaintiff Moody Woodrow Tanksley brings a complaint against defendants asserting claims under 42 U.S.C. § 1983, alleging violations of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Defendants Roberson, Marisoal, Boccella, Grounds, Williams, Parsons, and Muniz filed a Motion for Summary Judgment. Plaintiff filed a Response in Opposition to Defendant's Motion. Defendants then filed a Reply Memorandum of Points and Authorities in Support of the Motion for Summary Judgment. For the following reasons, defendants' motion is granted.

**FACTUAL BACKGROUND**

The following factual summary is stated in the light most favorable to plaintiff, the non-moving party, and does not necessarily reflect the facts likely to be proved at trial. On September 1, 2008, plaintiff was incarcerated at Salinas Valley State Prison. Plaintiff shared cell number D5-117 with another inmate. At 10:10 am on September 1, 2008, plaintiff experienced chest pains and his cell mate issued a "man down" call. Plaintiff's Deposition on Nov. 12, 2010 ("Pl.'s Dep.") at 16-17. Prison guards, including defendant Marisoal, arrived at plaintiff's cell, where plaintiff informed the guards he was having chest pains. *Id*. at 18-19. The guards put waist chains around plaintiff and placed him in a wheelchair to take him to the medical clinic. *Id.* at 19. When plaintiff arrived at the clinic, his chest pains rendered him unable to move himself to the waiting gurney in order to be transported to the Correctional Treatment Center ("CTC") Emergency Room. *Id.* at 28. Plaintiff confirms that when he was in the wheelchair he was "pretty much" "dead weight." *Id.* at 28. Defendants Marisoal and Roberson attempted to lift plaintiff from the wheelchair and move him to the gurney. *Id*. at 20, 28. According to plaintiff, they did not "set [plaintiff] on the gurney, they slammed [plaintiff] on the gurney." *Id.* at 20. During this process, plaintiff's left ankle made contact with an oxygen tank resting at the end of the gurney and plaintiff felt "twisting on [his] foot." *Id.* at 29. At one point, plaintiff attributes the twisting to both defendants Roberson and Marisoal, *id*. at 29, but later asserts that it was defendant Marisoal and an unnamed inmate paramedic that were controlling plaintiff's left leg when it contacted the oxygen tank, *id*. at 36-37. Upon contact, plaintiff suffered a laceration on his left ankle. *Id.* at 38.[1] Although not mentioned in plaintiff's amended complaint, he now contends that this laceration "quickly turned into a . . . staph infection" and that he "still has an open wound and could still lose [his] foot by amputation over that laceration." Plaintiff's

---

[1] Plaintiff indicates that when his ankle hit the oxygen tank, it "opened up" a prior injury to that ankle. Pl.'s Dep. at 37-38. However, he also states that the previous wound was healed by the date of this incident. *Id*. at 38.

2

Response in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Resp.") at 8.

After this interaction, plaintiff began threatening defendant Roberson. Pl.'s Dep. at 39-40. Defendant Roberson continued to ask whether plaintiff was having chest pains, to which plaintiff did not respond because he "was so upset [he] kept screaming and yelling." *Id*. at 40. When plaintiff arrived at CTC, defendant Williams was present, in addition to defendants Roberson and Marisoal. *Id.* at 41. An unnamed female nurse informed plaintiff that he was not having chest pains. *Id*. at 43. Defendant Williams escorted plaintiff to a "holding cage," where he was "stripped down" to his boxers, and given a psychological exam. *Id*. at 41-43, 46. Plaintiff attempted to explain to the psychiatrist that he "was physically abused by Captain Roberson and this crew." *Id.* at 49. At that point, the chest pains had abated, but plaintiff was suffering from the pain in his ankle. *Id.* at 49. Plaintiff was placed in an administrative segregation unit. Plaintiff agrees that none of the defendants punched, kicked, or hit him. *Id*. at 51-52.

Plaintiff describes defendant Marisoal as around five feet, five inches in height, with a medium build, and defendant Roberson as around five feet, ten inches in height, with a medium build. *Id.* at 24. Plaintiff is five feet, eight inches tall. *Id*. at 24. Defendants assert plaintiff weighed around 260 pounds on September 1, 2008, Defendants' Motion for Summary Judgment ("Def.'s Mot.") at 10, but plaintiff disputes that assertion, Pl.'s Resp. at 6. During his deposition on November 12, 2010, plaintiff asserted that he currently weighted 308 pounds, and that he had gained more than forty pounds since the date of the incident. Pl.'s Dep. at 32.

**STANDARDS**

A party is entitled to summary judgment as a matter of law if "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The party requesting summary judgment initially carries the burden of proving the absence of material fact. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Where the non-moving party bears the burden of proof at

trial, the moving party must only prove that there is an absence of evidence supporting the non-moving party's case, at which point the burden shifts to the non-moving party to put forth specific facts demonstrating the existence of a genuine issue for trial. *Id.*

Although the court draws all justifiable inferences in favor of the non-moving party, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

**DISCUSSION**

Plaintiff brings a federal claim pursuant to 42 U.S.C. § 1983, which creates liability for a person acting under color of law who deprives another of a right guaranteed by the Constitution or federal law. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). To prove his case under § 1983, plaintiff must prove that (1) defendants acted "under color of state law," and (2) defendants deprived plaintiff of a federal right. *Id.* (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). Plaintiff alleges the deprivation of his right to equal protection under the Fifth and Fourteenth Amendments, and the deprivation of his right to be free from cruel and unusual punishment under the Eighth Amendment. Pl.'s Resp. at 2. Defendant Marisoal claims that he is entitled to summary judgment because he has qualified immunity for his actions.[2] Defendants Roberson, Boccella, Grounds, Williams, Parsons, and Muniz claim they are entitled to summary judgment

---

[2] Although only defendant Marisoal claims qualified immunity, plaintiff at one point accuses both defendant Marisoal and defendant Roberson of inflicting the injury. Pl.'s Dep. at 29. To the extent plaintiff alleges direct harm from both defendants Marisoal and Roberson, the court will analyze the defense of qualified immunity as to both defendants.

4

because there is no casual connection between their actions and the alleged use of force.

**Qualified Immunity**

Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As such, it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A court evaluating a claim of qualified immunity must answer two questions: (1) Whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; (2) Whether the right at issue was clearly established at the time of the misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815-16 (2009); *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled by Pearson*, 555 U.S. 223. Because the right to be free from excessive force by prison officials is clearly established,[3] the dispositive question is whether the facts, taken in the light most favorable to plaintiff, show that defendants Marisoal or Roberson violated plaintiff's Constitutional rights under either the Fifth, Eighth, or Fourteenth Amendments.

<u>Fifth and Fourteenth Amendments - Equal Protection</u>

Plaintiff alleges a violation of his right to equal protection under the Fifth and Fourteenth Amendments. The Fifth Amendment applies only to federal actors. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) ("The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government—not to those of state or local governments."). Because plaintiff does not allege that any defendants are

---

[3] Defendants argue that "assisting Plaintiff atop a medical gurney so that he may be transported to an emergency room" does not violate clearly established law. Def.'s Mot. at 12. While this assertion is accurate, this court must analyze the facts in a light favorable to plaintiff. Plaintiff alleges that defendants intentionally inflicted pain by slamming him onto the gurney, thereby injuring his ankle. Although plaintiff may not sufficiently allege such facts, as determined in prong one of the *Saucier/Pearson* analysis, a reasonable person would understand that such excessive force is clearly prohibited by the Constitution. *See Whitley v. Albers*, 475 U.S. 312 (1986).

federal actors, he has failed to state a claim alleging a violation of the Fifth Amendment.

The Fourteenth Amendment's Equal Protection Clause requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (same). Plaintiff here has not alleged that he was a member of any protected class. Additionally, plaintiff is not permitted to create a class simply by claiming that all persons not injured received better treatment than he did. *Thornton*, 425 F.3d at 1167 ("An equal protection claim will not lie by conflating all persons not injured into a preferred class receiving better treatment than the plaintiff." (internal quotation marks and citation omitted)).[4] Therefore, plaintiff has failed to allege facts sufficient to show a violation of the Fourteenth Amendment's Equal Protection Clause.[5]

<u>Eighth Amendment - Cruel and Unusual Punishment</u>

---

[4] While "class of one" claims can exist, plaintiff still must establish that defendants intentionally, and without a rational basis, treated plaintiff different from others similarly situated. *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008). Plaintiff has made no such specific allegations. To the extent that plaintiff's allegations that defendants Marisoal and Roberson acted with the intent of hurting him demonstrate that the defendants intentionally treated him differently, plaintiff provides no evidence of that intent sufficient to demonstrate a genuine issue of fact (as discussed above).

[5] Plaintiff rightly does not allege a Fourteenth Amendment due process claim because any such claim would be preempted by the Eighth Amendment. *See Armendariz v. Penman*, 75 F.3d 1311, 1318-19 (9th Cir. 1996) (en banc), *overruled in part on other grounds as stated in Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 852-53 (9th Cir. 2007). Where a particular amendment "provides an explicit textual source of constitutional protection against [certain] governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [a plaintiff's] claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "After conviction, the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.'" *Id.* at 395 n.10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 666 (1962), prohibits the infliction of cruel and unusual punishments on those convicted of crimes.  In order to establish a violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment based on a claim of excessive use of force by prison officers, a prisoner must demonstrate that: (1) the prison official had a "sufficiently culpable state of mind;"[6] and (2) that the deprivation was "sufficiently serious."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

In order to establish that the prison official had the requisite intent, the prisoner must show "unnecessary and wanton infliction of pain" by the prison officers.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  As the Supreme Court explained in *Hudson v. McMillian*, "[w]hat is necessary to establish an 'unnecessary and wanton infliction of pain' . . . varies according to the nature of the alleged constitutional violation."  *Hudson*, 503 U.S. 1, 5 (1992) (quoting *Whitley*, 475 U.S. at 320).  An inmate alleging that prison officials failed to attend to medical needs, for example, must show "deliberate indifference," *id*. at 6 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)), whereas an inmate alleging use of excessive force during a prison disturbance must show that the force was applied "maliciously and sadistically for the very purpose of causing harm," *id*. (citing *Whitley*, 475 U.S. at 320-21).  The *Hudson* Court extended the *Whitley* standard to "all allegations of excessive force," explaining that "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id*. at 7.

In this case, plaintiff does not allege excessive use of force during a prison disturbance where prison officials' use of force was justified by an effort to maintain discipline, but the same

---

[6] "Although a defendant's subjective intent is not relevant to the qualified-immunity defense, his mental state is relevant where it is an element of the alleged constitutional violation."  *Jeffers v. Gomez*, 267 F.3d 895, 911 (9th Cir. 2001) (citing *Crawford-El v. Britton*, 523 U.S. 574, 589 & n.11 (1998)).

7

"concerns underlying [the] holding in *Whitley* arise" when a prison official faces a medical emergency. *Id*. at 6. In particular, "both situations require prison officials to act quickly and decisively," and their actions should therefore "be accorded wide-ranging deference." *Id*. (citing *Whitley*, 475 U.S. at 321-22 (internal quotation marks omitted)). As such, plaintiff must demonstrate that defendants acted with a malicious or sadistic intent to cause harm. Mere negligence is not enough. *See Wilson*, 501 U.S. at 298-99 ("To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety. . . . It is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the conduct prohibited." (quoting *Whitley*, 475 U.S. at 319)); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) ("Mere negligence is insufficient for liability. . . . An 'official's failure to alleviate a significant risk that he should have perceived but did not, . . . cannot under our cases be condemned as the infliction of punishment.'" (internal citations omitted)).

Plaintiff asserts in his deposition that Marisoal and Roberson intentionally inflicted the ankle injury, but he does not provide any direct or circumstantial evidence as to defendants' intent, other than the mere fact that his ankle came into contact with the oxygen tank. Pl.'s Dep. at 39.[7] Plaintiff also asserts that he "previously had a physical altercation with another

---

[7] During plaintiff's deposition, the following exchange took place:

Q: And it was your belief this was an intentional act on the part of Marisoal?
A: And Roberson.
Q: What makes you believe it was intentional?
A: By the way they did it.
Q: Did they say something to you?
A: No.
Q: But its simply because your leg came into contact with the oxygen tank that led you to believe it was intentional?
A: (Witness nods head.)
Q: Was that a "yes," sir?
A: Yes.

Pl's Dep. at 39-40.

8

correctional officer and [the] defendants did not like [him] because of that due to smart remarks made by the defendants." Pl.'s Resp. at 3.  However, plaintiff never states when such an altercation occurred or offers any evidence as to how such a previous altercation influenced defendants' behavior in this situation.  Although plaintiff intimates that defendants made "smart remarks," he never states the contents of the remarks, which defendants made them, or when they were made.  Such conclusory allegations are insufficient to establish a genuine issue of material fact.  *Jeffers v. Gomez*, 267 F.3d 895, 911 (9th Cir. 2001)("[T]o prevail on the motion for summary judgment, [plaintiff] must 'put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury." (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive.  To be cognizable on summary judgment, evidence must be competent.").[8]  Furthermore, plaintiff's deposition shows that he was unable to lift himself onto the gurney.  Pl.'s Dep. at 28.  Defendants Marisoal and Roberson therefore had few other options to deal with plaintiff's stated chest pains other than attempting to lift plaintiff themselves.  Indeed, a failure to do so may have given rise to a claim of "deliberate indifference" towards plaintiff's medical emergency.  *Estelle*, 429 U.S. at 104.

Plaintiff has failed to allege or show facts establishing that defendants Marisoal and Roberson had a sufficiently culpable state of mind.  Without demonstrating the requisite intent for an excessive force claim, plaintiff fails to demonstrate a constitutional violation, and defendants Marisoal and Roberson are entitled to qualified immunity.

**Vicarious Liability**

---

[8] "The requirement of Rule 56(e) that affidavit testimony be competent and admissible evidence applies with equal force to deposition testimony." *Samuels v. Doctors Hosp., Inc.*, 588 F.2d 485, 486 n.2 (5th Cir. 1979); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 155-56 (1970).

Under 42 U.S.C. § 1983, supervisory officials are generally not vicariously liable for the actions of subordinates. "A supervisor may be liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Jeffers*, 267 F.3d at 915 (internal citations and quotation marks omitted). Plaintiff has not alleged any personal involvement by Defendants Boccella, Grounds, Williams, Parsons, and Muniz. Pl.'s Dep. at 70-71.[9] As such, he must establish a sufficient causal connection between the defendants' conduct and the alleged excessive use of force.

As an initial matter, because plaintiff has not alleged sufficient facts to state a constitutional violation, plaintiff's vicarious liability claim fails. In other words, because defendants Marisoal and Roberson did not improperly use excessive force, there is no constitutional deprivation for which defendants Boccella, Grounds, Parsons, and Muniz might be vicariously liable. Even if plaintiff had established a constitutional violation, however, defendants Boccella, Grounds, Williams, Parsons, and Muniz are entitled to summary judgment because plaintiff does not provide any evidence to establish a causal connection between their actions and the alleged use of excessive force. Plaintiff acknowledges that defendants Grounds, Boccella, Parsons, and Muniz were not present at any point surrounding the incident. *Id*. at 42-43. Defendant Williams was not present during the alleged use of force, and was only present after plaintiff arrived at the CTC Emergency Room. *Id*. at 41. Indeed, plaintiff alleges only that defendants Grounds, Boccella, Williams, Parsons, and Muniz knew about the use of excessive force and did not take action. *Id.* at 70-71. Without alleging additional facts, such that defendants' failure to act had fostered a culture of abuse or excessive force within the prison, such that defendants Marisoal and Roberson were encouraged or requested to utilize such force, plaintiff has not demonstrated the required casual connection. *See Redman v. County of San*

---

[9] To the extent plaintiff alleges personal involvement by defendant Roberson, defendant Roberson is entitled to qualified immunity, as discussed above.

*Diego*, 942 F.2d 1435, 1454-55 (9th Cir. 1991) ("The 'sufficient causal connection' may be shown by evidence that the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights.  However, an individual's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." (internal quotation marks, citations, and alterations omitted)).

**CONCLUSION**

      For the foregoing reasons, defendants' Motion for Summary Judgment is GRANTED.

DATED: March 17, 2011

                                        /s/ Sidney R. Thomas
                                        Sidney R. Thomas, United States Circuit Judge
                                        Sitting by Designation